UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| R.N., by and through his next friend SHANNON NEVILL, et al., ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | No. 1:09-CV-165 (CEJ) |
| CAPE GIRARDEAU 63 SCHOOL DISTRICT, ) ) ) ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on defendant's motion for judgment on the pleadings or, in the alternative, for summary judgment. Plaintiffs oppose the motion and the issues are fully briefed.[1]

Defendant is a public school district in Cape Girardeau, Missouri. Plaintiff R.N. is a fourteen-year-old boy who attended the Cape Girardeau School District from August 2005 to December 2007. Plaintiff Shannon Nevill is R.N.'s mother and brings this action on his behalf. Plaintiffs assert a discrimination claim pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C. 12131, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 794 (Count I). Nevill also seeks reimbursement of medical expenses and other costs incurred as the result of defendant's discriminatory conduct (Count II). In its motion defendant argues that plaintiffs failed to exhaust administrative remedies under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400, *et seq.*, and cannot establish a discrimination claim under the ADA or the Rehabilitation Act.

---

[1]Also pending are plaintiffs' motion for discovery sanctions and defendant's motions to strike and for a protective order.

**I. Background**

On August 30, 2007, R.N. was diagnosed with perthes disease of the right hip.[2] At the time, he was a fifth grader in the Cape Girardeau School District. R.N's physician recommended that he stay off his legs and undergo surgery or physical therapy to treat the condition. R.N. opted for varus rotational osteotomy surgery and began using a wheelchair during school hours to mitigate the difficulty he had in walking.

Plaintiffs allege that the defendant failed to provide reasonable accommodations and discriminated against R.N. due to his disability. Plaintiffs claim that the defendant placed R.N. in homebound classes while he was recovering from surgery, instead of placing him in classes with non-disabled peers. Once R.N. returned to school, plaintiffs allege that he was forced to crawl or hop down stairs to get to his classrooms when the school's elevator was unavailable. R.N. was also required to attend physical education classes, even though he could not participate in class activities. In addition, plaintiffs claim that R.N. was harassed and treated poorly by classmates and staff members. Students allegedly called R.N. a "faker" and pushed his wheelchair into a locker. Plaintiffs also claim that R.N. was put into a headlock by the school's vice principal. On December 21, 2007, Neville withdrew R.N. from the Cape Girardeau School District.

In April 2008, prior to filing this action, Nevill filed an IDEA due process complaint with the Missouri Department of Elementary and Secondary Education, requesting that R.N. be provided with modified physical education classes and physical

---

[2]Perthes Disease is a disease in which changes take place in bone at the head of the fermur with deformity resulting. Taber's Cyclopedic Medical Dictionary.

therapy as a result of his perthes disease.  Nevill voluntarily dismissed her IDEA complaint on May 21, 2008.

**II**. <u>Legal Standard</u>

Fed.R.Civ.P. 12(c) sets the standard for reviewing a motion for judgment on the pleadings.  A Rule 12(c) motion for judgment on the pleadings challenges the legal sufficiency of the opposing party's pleadings. <u>See</u> <u>Irish Lesbian and Gay Org. v. Giuliani</u>, 143 F.3d 638, 644 (2nd Cir.1998).   When considering a motion for judgment on the pleadings under Rule 12(c), the court must accept as true all factual allegations set out in the complaint and construe the complaint in the light most favorable to the plaintiff, drawing all inferences in her favor.  <u>Wishnatsky v. Rovner</u>, 433 F.3d 608, 610 (8th Cir. 2006).  "Judgment on the pleadings is appropriate only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law," the same standard used to address a motion to dismiss for failure to state a claim under Rule 12(b)(6). <u>Ashley County, Ark. v. Pfizer, Inc</u>., 552 F.3d 659, 665 (8th Cir. 2009) (citing <u>Westcott v. City of Omaha</u>, 901 F.2d 1486, 1488 (8th Cir. 1990)).

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts.  <u>AgriStor Leasing v. Farrow</u>, 826 F.2d 732, 734 (8th Cir. 1987).  The moving party bears the burden of showing both the absence of a genuine issue of

material fact and its entitlement to judgment as a matter of law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Fed. R. Civ. P. 56(c).  Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists.  Fed. R. Civ. P. 56(e).  Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).

III. Discussion

A.   Exhaustion Requirement

Defendant contends that plaintiffs failed to exhaust administrative remedies under the IDEA before pursuing a civil action with the Court.  The IDEA was enacted to ensure that all children with disabilities have access to a free and appropriate public education.  20 U.S.C. § 1400(d).  The Act requires a parent, dissatisfied with an educational decision regarding her child, to exhaust state administrative remedies before proceeding to federal court.[3]  Birmingham v. Omaha Sch. Dist., 220 F.3d 850,

---

[3] 20 U.S.C. § 1415(l) provides as follows:
Nothing in this chapter shall be construed to restrict or limit the rights procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973,  or other Federal laws protecting the rights of children with disabilities,  except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

Subsection (f) provides for an "impartial due process hearing" and subsection (g) provides for an appeal to the state educational agency "[i]f the hearing required by subsection (f) of this section is conducted by a local education agency." 20 U.S.C.

4

854 (8th Cir. 2000). A federal court does not have subject matter jurisdiction over claims that do not meet the exhaustion requirement under the IDEA. <u>J.T. v. Mo. State Bd. of Ed.</u>, 2009 WL 262056, at *3 (E.D.Mo. Feb.4, 2009)(courts in this district have concluded that exhaustion under the IDEA is a question of subject matter jurisdiction, and that the question goes directly to the power of a court to hear the case.). Therefore, if a parent fails to exhaust administrative remedies, her claim will be dismissed for lack of jurisdiction.

The IDEA's exhaustion requirement is not limited to claims brought under the IDEA. Section 1415(l) of the IDEA states:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l). "[T]he IDEA exhaustion requirement applies to claims brought under the Rehabilitation Act or other federal statutes to the extent those claims seek relief that is also available under the IDEA." <u>M.Y. v. Special Sch. Dist. No. 1</u>, 544 F.3d 885, 888 (8th Cir. 2008). Therefore, when evaluating whether a non-IDEA claim should be dismissed for failure to exhaust administrative remedies, a court should look at the complaint's prayer for relief and determine whether the plaintiff's claim relates to the IEP [individualized educational program] process or is 'wholly unrelated' to that process." <u>Fasnacht v. Missouri State Board of Education</u>, 2009 WL 2568051, * at 5

---

§§ 1415(f) & 1415(g)(1).

5

(E.D.Mo. Aug. 18, 2009); J.T., 2009 WL 262056, at *4.  The IEP process "involves individual identification, evaluation, educational placement, and free, appropriate education (FAPE) decisions." M.P. v. Indep. Sch. Dist. No. 721, 439 F.3d 865, 868 (8th Cir. 2006).

The parties agree that plaintiffs did not exhaust administrative remedies before filing their ADA and Section 504 claims with the Court.  However, plaintiffs contend that exhaustion is not required because their claims are wholly unrelated to the IEP process.  Specifically, plaintiffs argue that they assert an unlawful discrimination claim and do not seek relief available under the IDEA.

Indeed, plaintiffs' complaint contains allegations of unlawful discrimination.  Plaintiffs allege that the defendant acted in bad faith and gross misjudgment when it failed to provide R.N. with reasonable accommodations.  Plaintiffs also allege that R.N. was ridiculed and harassed by classmates and was treated poorly by school staff members.  The Eighth Circuit has held that unlawful discrimination allegations such as these, are wholly unrelated to the IEP process, and therefore, are not subject to exhaustion requirements.  See M.P. 439 F.3d at 868( holding that parents did not need to exhaust administrative remedies when they alleged that the school district acted in bad faith or with gross misjudgment in failing to provide their son with accommodations in the education environment; failing to investigate allegations of disability discrimination, student-against-student harassment, hostile education environment, and disclosure of personal information).

However, despite plaintiffs' allegations of unlawful discrimination, the Court finds that the substance of plaintiffs' claims relates to the IEP process.  Plaintiffs allege that the defendant failed to provide R.N. with a wheelchair lift and placed him in homebound classes, instead of placing him in classes with non-disabled peers.   Plaintiffs

further allege that R.N. was required to attend physical education classes even though he was unable to physically participate in class activities.  These allegations relate to educational placement, and therefore, should have been be exhausted.  Plaintiffs also request that defendant provide R.N. with compensatory education.  Relief in the form of compensatory education relates to the IEP process because it involves providing a student with a free, appropriate education and it is relief that is also available under the IDEA.  See Fasnacht , 2009 WL 2568051, * at 4-6.  Because plaintiffs' allegations concern R.N.'s ability to receive a free, appropriate education, the Court cannot find that plaintiffs' claims are wholly unrelated to the IEP process.

Plaintiffs next argue that exhaustion is not required because their claims fall within an exception to the exhaustion requirement.  Exhaustion is not required when "(1) exhaustion would be futile;  (2) exhaustion would fail to provide adequate relief; or (3) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law."  A.C v. Indep. Sch. Dist. No. 152., 2006 WL 3227768, at *2 (D.Minn.2006)(citing Megan C.v. Indep. Sch. Dist. No. 625, 57 F.Supp.2d 776, 789 (D.Minn.1999)).

Plaintiffs contend that the defendant has a policy of discriminating against disabled students.  Plaintiffs point to statements made by defendant's employees in interviews conducted by the U.S. Department of Education Office of Civil Rights (OCR).  Robin Huffman, a coordinator for the defendant, and Deena Ring, a special services director for the defendant, stated that § 504 " is not a consolation prize for not being eligible under the IDEA."   (Doc # 54-2, p3)(Doc # 54-8, p4).   Sonia Shelton, a psychological examiner for the defendant also stated: "I don't know how the information about § 504 is given to parents.  I don't mention § 504 to them."  (Doc # 54-9, p2).  Plaintiffs also point to statements made by R.N.  During his deposition,

R.N. testified that he was put in a headlock by the school's vice principal. (Doc # 54-3, p2). According to plaintiffs, these statement show that the defendant engages in discriminatory conduct and fails to inform parents of their child's rights under Section 504.

The Court finds that plaintiffs have failed to meet their burden of showing that the defendant has adopted a policy of discrimination. The statements of Ms. Huffman and Ms. Ring do not indicate that the defendant has a policy of discriminating against disabled students. Rather, the statements show that Section 504 services are provided to students only after a team determines that such services are appropriate; they are not automatically given to students who meet the eligibility requirements under the IDEA. Also, plaintiffs misinterpret Ms. Shelton's statements. Based on examination of the entire interview, it is clear that Ms. Shelton's job responsibilities do not involve Section 504, and therefore, she is not responsible for informing parents on their Section 504 rights. Furthermore, R.N.'s testimony is specific to his experiences and does not show that the defendant adopted a policy of discriminating against all disabled students.

Plaintiffs next argue that exhaustion would be futile because defendant's counsel sent a letter to OCR, requesting that Nevill's OCR complaint be deemed moot based on non-residence. The Court finds that this argument is also unavailing. The records shows that Nevill voluntarily dismissed her IDEA claim, and therefore, chose not to exhaust administrative remedies. (Doc #42-10, p4).

### B.   Section 504 and ADA claim

Furthermore, even if exhaustion is not required, plaintiffs have failed to show that they are entitled to relief under Section 504 and the ADA. "[T]o obtain relief under § 504 and the ADA, a plaintiff is required to show that he (1) was a disabled

person; (2) was qualified to perform the essential functions of his job; and (3) suffered an adverse employment action because of his disability." Finan v. Good Earth Tools, 565 F.3d 1076,1079 (8th Cir. 2009); see also Buboltz v. Residential Advantages, Inc., 523 F.3d 864, 868 (8th Cir.2008)(stating the same analysis applies to both ADA and Rehabilitation Act claims).

To demonstrate a disability, a plaintiff must show that he has "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A).  "Major life activities" are functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(I).  "Substantially limits" means one is unable to perform a major life activity that the average person in the general population can perform. 29 C.F.R § 1630.2(j)(1).

To determine whether an impairment substantially limits a major life activity, courts consider: "(1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment."  29 C.F.R. § 1630.2(j)(2). "[T]he terms 'major life activities' and 'substantial limitation' must be interpreted strictly to create a demanding standard for qualifying as disabled." Gretillat v. Care Initiatives, 481 F.3d 649, 652 (8th Cir. 2007)(quoting Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 197 (2002)).

Plaintiffs contend that R.N. was disabled because he was required to use a wheelchair at school. To support their argument, plaintiffs rely on Sutton v. United Airlines, 527 U.S. 471 (1999).  In Sutton, the Court stated that individuals with wheelchairs may be disabled under the ADA because of the substantial limitation on their ability to walk or run. Id. at 488.

9

R.N.'s use of a wheelchair does not, by itself, establish that he was disabled. In order for an impairment to constitute a disability, it must be long-term or of permanent duration. Kirkeberg v. Canadian Pacific Ry, 619 F.3d 898, 904 (8th Cir. 2010)("to be substantially limiting, an impairment must be of an extended or permanent duration.") "[A] temporary impairment with little or no long-term impact does not constitute a disability" under the ADA or § 504. Pittari v. American Eagle Airline, Inc., 468 F.3d. 1056, 1063 (8th Cir. 2006).

Here, there is no evidence that plaintiff suffered from a long-term or permanent impairment. Medical records indicate that R.N.'s impairment was expected to heal within two years. (Doc #42-6, p3). Reports also show that R.N.'s perthes disease was healed on May 18, 2010, less than three years after his diagnosis. (Doc # 42-6, p15). Courts have held that impairments with impacts lasting around a year, and even more than two years, are not sufficiently permanent or long-term to come within the definition of disability. See Rinkenberger v. City of Clearwater, 44 Fed. Appx. 23, 24 (8th Cir.2002) (11 months); Durham v. City of Portland, No. 99-35236, 2000 WL 328122, at *2 (9th Cir. 2000) (10 months); Wilmerth v. City of Santa Rosa, 945 F.Supp. 1271, 1276 (N.D.Cal. Oct. 1, 1996) (more than 2 years); Rakestraw v. Carpenter Co., 898 F.Supp. 386, 390-91 (N.D.Miss. Sept. 29, 1995) (22 months); Roush v. Weastec, Inc., 96 F.3d 840, 843 (6th Cir. 1996). Because there is no evidence in the record suggesting that R.N.'s impairment was permanent or long-term, the plaintiffs have failed to raise a genuine issue of material fact with respect to whether R.N. was disabled under § 504 and the ADA.

Having determined that plaintiffs failed to exhaust administrative remedies and establish a long-term or permanent impairment, the Court finds it unnecessary to

determine whether the defendant discriminated against R.N. in violation of § 504 and the ADA.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for judgment on the pleadings or, in the alternative, for summary judgment [#41] is **granted**.

**IT IS FURTHER ORDERED** that plaintiff's motion for discovery sanctions [#44] is **denied**.

**IT IS FURTHER ORDERED** that defendant's motion to strike [# 61] is **denied as moot**.

**IT IS FURTHER ORDERED** that defendant's motion for a protective order or order sealing evidence submitted for pre-trial and trial [#66] is **denied as moot**.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 14th day of March, 2012.